**2022-1092**

# United States Court of Appeals for the Federal Circuit

ADASA, INC.,

*Plaintiff-Appellee,*

– v. –

AVERY DENNISON CORPORATION,

*Defendant-Appellant.*

*On Appeal from the United States District Court for the District of Oregon, Mustafa T. Kasubhai, Magistrate Judge*

## REPLY BRIEF FOR DEFENDANT-APPELLANT

MARK YEH-KAI TUNG
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
(650) 801-5000
marktung@quinnemanuel.com

DEREK L. SHAFFER
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, DC 20005
(202) 538-8000
derekshaffer@quinnemanuel.com

JOSEPH MILOWIC III
OWEN ROBERTS
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000
josephmilowic@quinnemanuel.com
owenroberts@quinnemanuel.com

*Counsel for Defendant-Appellant*

## TABLE OF CONTENTS

**Page**


TABLE OF CONTENTS ........................................................................................ i

PRELIMINARY STATEMENT ............................................................................ 1

ARGUMENT ........................................................................................................ 3

I. THE SECTION 101 CHALLENGE IS PROPERLY BEFORE THIS COURT AND FATAL TO ADASA'S CASE ................................................ 3

A. ADASA Mischaracterizes The Record In Attempting To Forestall Review Of Claim 1's Abstractness ........................................ 3

B. The Claimed Advance Over The Prior Art Consists Of Abstract Sub-Division Of An Already-Partitioned Data Field ............................ 6

C. Claim 1 Does Not Identify Any Inventive Concept In Sub-Dividing An Already-Partitioned Data Field ...................................... 14

II. THE INVALIDITY CHALLENGE UNDER SECTIONS 102 AND 103 PRESENTED, AT THE VERY LEAST, AN ISSUE FOR THE JURY ................................................................................................ 16

III. ADASA FAILS TO REHABILITATE THE DISTRICT COURT'S FOUNDATIONAL ERRORS ON DAMAGES ........................................... 20

A. The Erroneous Instruction And Verdict Form Require Reversal Of The Damages Award ................................................................ 20

B. The District Court Committed Reversible Error By Excluding Comparable Licenses ..................................................................... 23

IV. ADASA FAILS TO JUSTIFY THE DISTRICT COURT'S $20 MILLION DISCOVERY SANCTION ......................................................... 26

CONCLUSION ................................................................................................... 31

## TABLE OF AUTHORITIES

**Page**

CASES

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
728 F.3d 1336 (Fed. Cir. 2013) ....................7

*Am. Axle & Mfg., Inc. v. Neapco Hldgs. LLC*,
967 F.3d 1285 (Fed. Cir. 2020) ....................10

*Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*,
490 F. Supp. 3d 593 (E.D.N.Y. 2020) ....................31

*Apple Inc. v. Motorola, Inc.*,
757 F.3d 1286 (Fed. Cir. 2014) ....................25

*Apple Inc. v. Wi-LAN Inc.*,
25 F.4th 960 (Fed. Cir. 2022) ....................24

*Atl. Thermoplastics Co. v. Faytex Corp.*,
5 F.3d 1477 (Fed. Cir. 1993) ....................22

*Bayer Healthcare LLC v. Baxalta Inc.*,
989 F.3d 964 (Fed. Cir. 2021) ....................23

*Bilski v. Kappos*,
561 U.S. 593 (2010) ....................15

*Bowers v. NCAA*,
475 F.3d 524 (3d Cir. 2007) ....................26

*C R Bard Inc. v. AngioDynamics, Inc.*,
979 F.3d 1372 (Fed. Cir. 2020) ....................14

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019) ....................7

*Cotton v. Mass. Mut. Life Ins. Co.*,
402 F.3d 1267 (11th Cir. 2005) ....................26

*Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.*,
635 F.3d 1373 (Fed. Cir. 2011) ....................20

*Data, Inc. v. DXC Tech. Co.*,
980 F.3d 709 (9th Cir. 2020) ....................6

*DePinto v. Provident Sec. Life Ins. Co.*,
323 F.2d 826 (9th Cir. 1963) ....................30

*Dow Chem. Co. v. Mee Indus., Inc.*,
341 F.3d 1370 (Fed. Cir. 2003) ....................22

*Enfish LLC v. Microsoft Corp.*,
822 F. 3d 1327 (Fed. Cir. 2016) ....................10

*ePlus, Inc. v. Lawson Software, Inc.*,
700 F.3d 509 (Fed. Cir. 2012) ....................5

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
955 F.3d 1317 (Fed. Cir. 2020) ....................5, 6

*Ericsson, Inc. v. D-Link Sys., Inc.*,
773 F.3d 1201 (Fed. Cir. 2014) ....................21

*Finjan, Inc. v. Secure Computing Corp.*,
626 F.3d 1197 (Fed. Cir. 2010) ....................25

*Fink v. Gomez*,
239 F.3d 989 (9th Cir. 2001) ....................28

*Halaco Eng'g Co. v. Costle*,
843 F.2d 376 (9th Cir. 1988) .................... 28, 31

*Intellectual Ventures I LLC v. Capital One Financial Corp.*,
850 F.3d 1332 (Fed. Cir. 2017) .................... 11, 14

*Intellectual Ventures I LLC v. Symantec Corp.*,
838 F.3d 1307 (Fed. Cir. 2016) ....................11

*Lighting Ballast Ctrl. LLC v. Philips Elecs. N. Am. Corp.*,
790 F.3d 1329 (Fed. Cir. 2015) ....................1, 3

*Lucent Technologies, Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) ....................24

*Med. Instrumentation & Diagnostics Corp. v. Elekta AB*,
344 F.3d 1205 (Fed. Cir. 2003) .................... 19, 20

*Mentone Solutions LLC v. Digi International Inc.*,
2021 WL 5291802 (Fed. Cir. Nov. 15, 2021) ....................7

*Merchant v. Corizon Health, Inc.*,
993 F.3d 733 (9th Cir. 2021) .................... 29, 30

*Mikkelsen Graphic Eng'g, Inc. v. Zund Am., Inc.*,
541 F. App'x 964 (Fed. Cir. 2013) ....................6

*Packet Intelligence LLC v. NetScout Systems, Inc.*,
965 F.3d 1299 (Fed. Cir. 2020) ....................7

*Perfect Web Techs., Inc. v. InfoUSA, Inc.*,
587 F.3d 1324 (Fed. Cir. 2009) ....................17

*PersonalWeb Technologies LLC v. Google LLC*,
8 F.4th 1310 (Fed. Cir. 2021) .......... 13

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
849 F.3d 1360 (Fed. Cir. 2017) .......... 24

*R&R Sails, Inc. v. Ins. Co. of Penns.*,
673 F.3d 1240 (9th Cir. 2012) .......... 28

*Secured Mail Solutions LLC v. Universal Wilde, Inc.*,
873 F.3d 905 (Fed. Cir. 2017) .......... 12, 13

*Snellman v. Ricoh Co.*,
862 F.2d 283 (Fed. Cir. 1988) .......... 24

*SynQor, Inc. v. Artesyn Techs., Inc.*,
709 F.3d 1365 (Fed. Cir. 2013) .......... 31

*TecSec, Inc. v. Adobe Inc.*,
978 F.3d 1278 (Fed. Cir. 2020) .......... 7

*Trell v. Marlee Electronics Corp.*,
912 F.2d 1443 (Fed. Cir. 1990) .......... 24

*Uniloc USA, Inc. v. LG Electronics USA, Inc.*,
957 F.3d 1303 (Fed. Cir. 2020) .......... 9, 10

*United States for Use & Benefit of Wiltec Guam, Inc. v. Kahaluu Constr. Co.*,
857 F.2d 600 (9th Cir. 1988) .......... 30

*W. Watersheds Project v. U.S. Dep't of the Interior*,
677 F.3d 922 (9th Cir. 2012) .......... 1, 3

*Warner-Lambert Co. v. Teva Pharms. USA, Inc.*,
418 F.3d 1326 (Fed. Cir. 2005) .......... 12

*Yujin Robot Co. v. Synet Elecs., Inc.*,
744 F. App'x 338 (9th Cir. 2018) .......... 30

## RULES / STATUTES

35 U.S.C. §101 .......... 4, 5, 6

35 U.S.C. §103(a) .......... 4

35 U.S.C. § 284 .......... 22

Rule 12 .......... 3

Rule 37 .......... 26

Rule 37(c)(1) .......... 30

Rule 50 ....................................................................................................5
Rule 50(a)..............................................................................................1, 3
Rule 50(b)..............................................................................................1, 3
Rule 56 ....................................................................................................3

## PRELIMINARY STATEMENT

ADASA labors to conjure supposed "waivers" of arguments that were not only repeatedly presented but *squarely ruled upon* below. For the Ninth Circuit and this Court alike, however, "[t]here is no waiver if the issue was raised, the party took a position, and the district court ruled on it." *W. Watersheds Project v. U.S. Dep't of the Interior*, 677 F.3d 922, 925 (9th Cir. 2012); *see Lighting Ballast Ctrl. LLC v. Philips Elecs. N. Am. Corp.*, 790 F.3d 1329, 1338 (Fed. Cir. 2015) (same). ADASA is right to fear merits review but wrong to think it can avoid it.

The record refutes ADASA's curious notion (Red Br. 15-16) that Avery Dennison never raised its challenge under Section 101. Avery Dennison *repeatedly* moved on this basis: in its initial pleading because the claims are "directed to the abstract idea of allocating blocks of serial numbers using sequences of bits," Appx201; then again on summary judgment because the "claims were directed to the abstract idea of partitioning a number space in the context of an RFID transponder," Appx4274; then yet again under Rule 50(a) & (b), Appx15762-15766, Appx14096-14099. And the District Court repeatedly upheld eligibility on the merits, without finding the supposed waiver. Appx6123-6132, Appx15776, Appx14613-14615. Only desperation could lead ADASA to question preservation of an issue that was so fulsomely pressed and decided.

ADASA's other waiver arguments likewise fall flat. ADASA urges this Court not to consider Section 103 (Red Br. 32), even though the District Court expressly acknowledged Avery Dennison's obviousness arguments and resolved them for ADASA, Appx6132-6138, after Avery Dennison pleaded this basis for invalidity, Appx1965, Appx1972-1973, and invoked it in opposing summary judgment, Appx5269-5283, Appx5895-5901. ADASA suggests that Avery Dennison fell short by emailing the court and counsel its requested jury instructions and verdict form on lump-sum damages (Red Br. 4-5), even though Avery Dennison made its requests pellucid, Appx15716-15718, Appx15735-15746, whereupon the District Court made "sure that [its] ruling is also clear on this record, and that way also [Avery Dennison's] objections can be adequately preserved," Appx15747.[1] And ADASA tries to inhibit review (Red Br. 54, 60) of the staggering discovery sanction, too, ignoring that ADASA's motion never sought anything like the unprecedented $20 million award, Appx13733-13737, Appx14081-14085, while Avery Dennison challenged the specific sanction once broached, Appx14582.

On the merits, ADASA's arguments are few and feeble. Claim 1 should be invalidated, the sanction vacated, and the judgment reversed.

---

[1] The stipulated record includes the requested instruction and verdict form. Appx17898-17944.

## ARGUMENT

# I. THE SECTION 101 CHALLENGE IS PROPERLY BEFORE THIS COURT AND FATAL TO ADASA'S CASE

## A. ADASA Mischaracterizes The Record In Attempting To Forestall Review Of Claim 1's Abstractness

ADASA relies heavily upon waiver arguments in attempting to rescue Claim 1 from invalidation, insisting that Avery Dennison "cannot challenge the District Court's *Alice* decision on appeal." Red Br. 15. This ignores the law of waiver. A party "preserve[s] the issue for appeal" to this Court, provided it "made clear … its position on the issue and the issue was finally resolved by the district court prior to trial." *Lighting Ballast*, 790 F.3d at 1338; *see W. Watersheds*, 677 F.3d at 925.

Not only did Avery Dennison advance its Section 101 challenge, but it did so at least four times,[2] resulting in at least three rulings, each time on the merits.[3] In nonetheless insisting that Avery Dennison *never* challenged patent eligibility, Red Br. 15-16, ADASA seizes on the "Contingent" label on Avery Dennison's motion for summary judgment. But ADASA overlooks the motion's clear statement of the

[2] Appx198-204 (Rule 12 motion); Appx261-268 (Rule 12 reply); Appx270-319 (Rule 12 argument); Appx4267-4276 (Rule 56 motion); Appx5602-5606 (Rule 56 reply); Appx5902-5904 (Rule 56 argument); Appx15762-15766 (Rule 50(a) motion); Appx14096-14099 (Rule 50(b) motion); Appx14123-14126 (Rule 50(b) reply); Appx14219-14233 (Rule 50(b) argument).

[3] *See* Appx6129-6132 (Rule 56 decision); Appx15776 (Rule 50(a) decision); Appx14613-14615 (Rule 50(b) decision).

"Contingen[cy]": "In the event that the Court does not grant in full Avery Dennison's motion for judgment of noninfringement, Avery Dennison moves for judgment that all of the asserted claims are invalid under 35 U.S.C. §103(a) and §101." Appx4267. Avery Dennison argued, in tandem, that invalidation should follow from interpreting the claim broadly enough to find infringement (*e.g.*, Appx4273), but that was an argument, not a precondition, and came long after claim construction. The specified "contingency" was denial of summary judgment on noninfringement, which indisputably came to pass. Appx6148.

Far from misperceiving that Avery Dennison's Section 101 challenge was inoperative, the District Court and ADASA together recognized that eligibility was squarely at issue. In denying what it aptly termed "Defendant's Alternative Motion for Summary Judgment of Invalidity under 35 U.S.C. § 101," the District Court noted that "Defendant challenges the patentability of the '967 Patent because its claims were directed to the abstract idea of partitioning a number space in the content of an RFID transponder." Appx6129-6132; *see also, e.g.*, Appx14220 (referencing "my opinion on the summary judgment motion that Avery Dennison filed that I denied"). Likewise, ADASA repeatedly referred to the court having "denied Avery Dennison's motion for summary judgment regarding patent eligibility." Appx6950; *e.g.*, Appx13874 (ADASA noting court "used [its] reasoning to deny summary judgment to

Avery" under Section 101). ADASA's revisionism cannot be reconciled with its recognition of Avery Dennison's operative challenge below.

In any event, Avery Dennison then *renewed* its Section 101 challenge, without any contingency, in seeking judgment under Rule 50. Appx15762-15766; Appx14096-14099. Those motions, too, were resolved on their merits. Appx15776; Appx14613-14615. Thus, "the district court and [ADASA] were made aware of [Avery Dennison's] argument … not just at the summary judgment stage, but also at the JMOL stage." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012) (rejecting waiver). Although Avery Dennison was not obligated to renew its challenge, *see Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1321-24 (Fed. Cir. 2020), that it did so further eviscerates any waiver claim.

To nonetheless argue waiver, ADASA misstates the record. According to ADASA, "[b]oth sides moved for summary judgment on patent eligibility." Red Br. 15. But the lone footnote on Section 101 that ADASA relies upon for this proposition shows otherwise. There, ADASA simply "***reserve[d] the right*** to seek leave from the Court to cross move for summary judgment [on Section 101] in ADASA's favor ***at that time***." Appx3267 (emphasis added). In fact, ADASA never filed any such cross-motion.

Even were ADASA correct to theorize that the District Court affirmatively granted summary judgment for ADASA before trial, no waiver could result—for this

Court has recognized the "right to appeal what was effectively a grant of summary judgment of patent validity to [the patent-holder]." *Ericsson*, 955 F.3d at 1322. If anything, any affirmative grant of summary judgment to ADASA as a nonmoving party on Section 101, *sans* notice to the moving party, would be legal error that itself necessitates reversal. *See Mikkelsen Graphic Eng'g, Inc. v. Zund Am., Inc.*, 541 F. App'x 964, 972 (Fed. Cir. 2013) (vacating summary judgment of no invalidity for nonmoving patentee); *Data, Inc. v. DXC Tech. Co.*, 980 F.3d 709, 714 (9th Cir. 2020) (similar). ADASA's recounting of the procedural history is thus not only wrong, but a recipe for reversal if credited. By no plausible account can the District Court's repeated rejection of Avery Dennison's Section 101 challenge, on its merits, evade appellate review.

### B. The Claimed Advance Over The Prior Art Consists Of Abstract Sub-Division Of An Already-Partitioned Data Field

When ADASA reaches the merits, it becomes clear why it goes to such tortured lengths arguing waiver: Claim 1 of the '967 Patent does not claim eligible subject matter. Not once does ADASA cite the District Court's rulings on Section 101 (*see* Red Br. 21-31), which are incapable of withstanding review.

ADASA pays similarly scant attention to the actual claim language. Instead, ADASA urges this Court to "analyze[] the ***specification*** to determine whether the claims focus on specific improvements." Red Br. 18 (emphasis added). But "any reliance on the specification in the § 101 analysis must always yield to the claim

language," and "the specification cannot be used to import details from the specification if those details are not claimed." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019).

Notably, ADASA's cited authorities (Red Br. 18 n.4) correspondingly foreclose its attempt to bootstrap an abstract idea into a concrete invention by invoking the specification alone. *See, e.g.*, *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292 (Fed. Cir. 2020) (analysis "must focus on the language of the Asserted Claims themselves, considered in light of the specification") (cleaned up). ADASA gains nothing from *Packet Intelligence LLC v. NetScout Systems, Inc.*, 965 F.3d 1299, 1309 (Fed. Cir. 2020), where "[t]he claims detail[ed] how [a network refinement] is achieved in several steps," or *Mentone Solutions LLC v. Digi International Inc.*, 2021 WL 5291802, *4-5 (Fed. Cir. Nov. 15, 2021), where the claim language "recite[d] a particular method of breaking [a formerly] fixed relationship" in mobile communications. These authorities involve claimed inventions that (unlike ADASA's) improved computer networks in ways not replicable by the human mind, and they only confirm and apply the basic principle that eligibility is properly assessed relative to the specific invention actually claimed. But "the level of detail in the specification does not transform a claim reciting only an abstract concept into a patent-eligible system or method." *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013).

Claim 1 describes sub-dividing a pre-existing portion of a pre-existing memory structure—or, in ADASA's words, "re-formatting the tag serial number space." Red Br. 23. ADASA spins this as adding "a whole new data field," *id.*, but the claim's text is confined to stating that— as is always true in any RFID tag—"the unique object number compris[es] an object class information space and a unique serial number space." Appx101. ADASA never pretended to have invented either of those "spaces." Indeed, ADASA's own explanation of the invention confirms it supplies no "new data field," but only a reframing of the familiar (and unchanged) "Serial Number" data field:







Appx228-230.

Claim 1 thus differs fundamentally from the invention credited in *Uniloc USA, Inc. v. LG Electronics USA, Inc.*, 957 F.3d 1303 (Fed. Cir. 2020). Those claims required "adding to each inquiry message prior to transmission an additional data field for polling at least one secondary station," *id.* at 1306 (quoting claim), which actually entailed adding and transmitting new structures absent from prior art inquiry messages. They thereby "eliminat[ed] or reduc[ed] the delay present in conventional systems where the primary station alternates between polling and sending inquiry messages,"—rather than doing both together. *Id.* at 1308. Contrast that with Claim 1, which requires the *same* data field (the "serial number space"), just re-framed to identify its binary content as partitioned and derived from an allocated block. The leading partition (dubbed "Most Significant Bits") need not convey any particular information, be recognized as a separate segment by any RFID reader, or even consist of a set number of bits—it just needs to come from "an allocated block of serial numbers" that start with the same sequence of 0s and 1s. Appx101.

Doomed by the claim, ADASA diverts to the specification. From *that*, ADASA trumpets the potential advantage of using this technique to encode RFID tags "without the need for constant real time database connectivity." Red Br. 21-22. ADASA thereby disregards the claim construction it successfully urged, Appx396-403, according to which quasi-autonomous encoding capability is *not* required. Appx836 (emphasizing, in adopting ADASA's construction, that history on patentability

contained "little to no discussion of continuous connection to a central database, autonomous or quasi-autonomous encoding, or how the allocated block is derived or assigned"). The *absence* of these elements from the claim was pivotal to the infringement findings. *See, e.g.*, Appx4556 ("commissioning authority," used by Avery Dennison to encode many accused tags, "does not enable autonomous or quasi-autonomous commissioning"); Appx15353-15354 (ADASA's expert agreeing that some accused schemas "require a continuous connection to a central database"). To defend eligibility, ADASA is defying this Court's repeated holding "that features that are not claimed are irrelevant as to step 1 or step 2 of the *Mayo*/*Alice* analysis." *Am. Axle & Mfg., Inc. v. Neapco Hldgs. LLC*, 967 F.3d 1285, 1293 (Fed. Cir. 2020).

Even if ADASA could walk back its claim construction and abandon its infringement theory, the purported benefit of avoiding a "continuous connection to a central database" is not a "technological improvement" that might save the claim. As ADASA admits, avoiding a real-time connection, at best, streamlines *manual labor operations*. Red Br. 22. Nothing is claimed about improving the structure or operation of the system or network itself, *e.g.*, by adding a new data field that allows the network to send messages and conduct polling simultaneously as in *Uniloc*. *See* 957 F.3d at 1307-08. Nor does the invention improve how a computer or database stores and retrieves data. *See Enfish LLC v. Microsoft Corp.*, 822 F. 3d 1327, 1339 (Fed. Cir. 2016). Simply speeding up human work falls short under *Alice*. *See, e.g.*,

*Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1315-18 (Fed. Cir. 2016).

Reliance upon quasi-autonomy is misplaced for yet another reason: It cannot be "the focus of the claimed advance over the prior art" at step one, *Intellectual Ventures I LLC v. Capital One Financial Corp.*, 850 F.3d 1332, 1338 (Fed. Cir. 2017), because it was *known* to prior art. Specifically, *RFID for Dummies* disclosed "a decentralized, hierarchical approach to allocating serial numbers" for whenever "[a]n always-accessible central numbering authority isn't practical." Appx3877-3878. As discussed *infra*, this reference taught the substance of every limitation in Claim 1; it also disclosed the idea of accomplishing "quasi-autonomous encoding" by allocating blocks of serial numbers to RFID encoders.

Nor can ADASA change the analysis by sprinkling around the phrase "hardware instance," *e.g.*, Red Br. 1, 2, 4, 14, 21, 25. Let's be clear: ADASA does not claim to have invented the substrate, antenna, or chip referenced in Claim 1, and it does not engage this Court's holdings that "restrict[ing] the invention's field of use … do[es] not render an otherwise abstract concept any less abstract." *Intellectual Ventures*, 850 F.3d at 1340; Blue Br. 30-32. The only claimed innovation here concerns how a number is partitioned, different from improving the hardware. Again, it is no less abstract to claim a unique identifier encoded on an RFID tag than it is to

claim a newly-composed VIN number printed on a car door, or an account number stamped into a credit card, or an ISBN number embossed inside the cover of a book.[4]

ADASA only further betrays its Section 101 problem by relying (Red Br. 24, 30) upon dicta from *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905 (Fed. Cir. 2017), whose facts and holding doom Claim 1. In *Secured Mail*, the patentee claimed a barcode comprising "a single set of encoded data that is generated by concatenating a sender-assigned unique identifier with sender data, recipient data, and shipping method data." *Id.* at 907. This Court held that a new way of concatenating data into a familiar, readable format was abstract because it was "not directed to a new barcode format, an improved method of generating or scanning barcodes, or similar improvements in computer functionality." *Id.* at 910.

Precisely the same holds here: Claim 1 of the '967 Patent simply claims concatenating two data segments to create the serial number in a familiar identifier field on an RFID tag. The claimed tags are encoded and read by the same machines that encoded and read prior tags and continue to encode and read non-accused tags: in the words of ADASA's expert, "at its core, the tag encoding process is the same from

---

[4] ADASA cries "waiver" again to dismiss these analogies. Red Br. 30 n.7. But the summary-judgment record discussed these forms of identifiers, Appx3822-3824, and it is unobjectionable to offer specific analogies supporting the same "claim or issue that [was] pressed before the trial court." *Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326, 1338 n.11 (Fed. Cir. 2005)

the point of when the RFID tag data reaches the encoder," and the claimed invention here is "the way the tag ID itself is created." Appx254. However created, those "tag IDs" not only are but *must* be in the same format as RFID identifiers that preceded them. *E.g.*, Appx228-230, Appx4293. Thus, Claim 1's partioning of the preexisting data field no more invents a "new RFID format" than the claim at issue in *Secured Mail* yielded a "new barcode format." 873 F.3d at 910.

Where, as here, an invention claims an identifier number by reference to its constituent parts, it is abstract. That was true in *Secured Mail* and also in *PersonalWeb Technologies LLC v. Google LLC*, 8 F.4th 1310 (Fed. Cir. 2021), where "use of content-based identifiers" was "abstract," *id.* at 1316, notwithstanding the patentee's preferred description of "a concrete process that physically changes how data is stored, identified, and accessed in computer networks," Reply Br. for Appellant at 27, *PersonalWeb* (Nos. 20-1543, 20-1553, 20-1554) 2020 WL 6866798 (Nov. 17, 2020). Other decisions cited in *PersonalWeb* accord. *See* 8 F.4th at 1316.

Indeed, even where an invention *does* call for the creation and use of a new data structure, rather than claiming how data in an old structure is generated, the invention can *still* be abstract. Like ADASA, the patentee in *Intellectual Ventures* argued that "the invention requires a *specific* data structure" and therefore was not abstract. Br. for Appellant at 36, *Intellectual Ventures* (No. 2016-1077) 2016 WL 265711 (Jan. 14, 2016). While accepting that description, the Court explained that the patent's

"specific data structures and objects (PRTs and MRTs) also does not change our analysis under" step one, as they only added "a degree of particularity" to an abstract idea. 850 F.3d at 1340-41. Even accepting ADASA's mischaracterization (Red Br. 29) of partitioning a serial number space as "adding a never-before-extant data field," abstraction persists.

### C. Claim 1 Does Not Identify Any Inventive Concept In Sub-Dividing An Already-Partitioned Data Field

ADASA lacks any real argument for reaching a different result at step two. It offers no "inventive concept sufficient to transform the claimed ineligible subject matter into a patent-eligible application." *C R Bard Inc. v. AngioDynamics, Inc.*, 979 F.3d 1372, 1382 (Fed. Cir. 2020) (cleaned up). Recognizing its exposure just before final judgment was entered, ADASA sought, unsuccessfully, a favorable ruling as to its supposedly inventive concept. Appx14563-14565, Appx14574-14575.

Nevertheless, ADASA asserts that "the '967 Patent claims possess an inventive step"—without even describing it. Red Br. 30. The closest ADASA comes is repeating "the use of most significant bits within the serial number space." Red Br. 31. But that is just another way of referencing the same partitioning of a familiar data structure, not a separate concept. And while ADASA seeks to describe potential overlaps in bits among decimal serial numbers, Red Br. 38 n.10, it never denies that serial numbers can easily be created by hand using the claimed method:

| Block One | | |
|---|---|---|
| MSB | LSB | Resulting Serial Number |
| 010 | 0000001 | 0100000001 |
| 010 | 0000010 | 0100000010 |
| 010 | 0000011 | 0100000011 |
| 010 | 0000100 | 0100000100 |

| Block Two | | |
|---|---|---|
| MSB | LSB | Resulting Serial Number |
| 011 | 0000001 | 0110000001 |
| 011 | 0000010 | 0110000010 |
| 011 | 0000011 | 0110000011 |
| 011 | 0000100 | 0110000100 |

| Block Three | | |
|---|---|---|
| MSB | LSB | Resulting Serial Number |
| 100 | 0000001 | 1000000001 |
| 100 | 0000010 | 1000000010 |
| 100 | 0000011 | 1000000011 |
| 100 | 0000100 | 1000000100 |

Finally, ADASA discounts the preemption concerns posed by monopolizing one way of further sub-dividing serial numbers for RFID tags amidst a prevailing, widely-practiced standard for serializing RFID tags. In a footnote, ADASA offers assurance that Claim 1 does not cover *every* RFID tag ever created. Red Br. 31 n.8. But mere existence of non-infringing alternatives is cold comfort. The global convention of EPC SGTIN-96 already calls for partitioning a 96-bit data structure, and all subscribers are at risk of infringing any claim that covers sub-dividing one established partition. This is a paradigmatic "monopoly over an abstract idea." *Bilski v. Kappos*, 561 U.S. 593, 612 (2010).

## II. THE INVALIDITY CHALLENGE UNDER SECTIONS 102 AND 103 PRESENTED, AT THE VERY LEAST, AN ISSUE FOR THE JURY

To justify keeping *RFID for Dummies* and Kuhno from the jury, ADASA relies upon the same pro-ADASA factual gloss that led the Magistrate Judge to grant summary judgment. It suffices to note that fact testimony, expert opinions, and even the references themselves pose, at a minimum, material factual disputes classically reserved for the jury. That ADASA argues it has the *better interpretation* of the evidence does not mean it should have won on *summary judgment*. If anything, ADASA's claim is invalid as a matter of law, especially once patentable weight is assessed and accounted for under Section 101, *supra*. Blue Br. 31-32.

Unable to defend Claim 1 as non-obvious, ADASA repeats its waiver refrain and argues "this appeal only preserves an anticipation issue." Red Br. 32. But Avery Dennison asserted both anticipation *and* obviousness as affirmative defenses and bases for invalidity. Appx1965, Appx1972-1973. In opposing summary judgment, Avery Dennison likewise invoked both anticipation *and* obviousness. Appx5270, Appx5279-5284, Appx5895-5901. Accordingly, ADASA needed to show the absence of any issue of fact as to both anticipation *and* obviousness. And the District Court, in granting summary judgment, recognized (correctly) that Avery Dennison argued both anticipation *and* obviousness, before ruling (erroneously) for ADASA on both. Appx6133-6138.

Although ADASA tries to shirk its burden by fixating on Avery Dennison's experts, Red Br. 32, expert opinions are *not* "always a prerequisite" to obviousness, which instead "may include recourse to logic, judgment, and common sense available to the person of ordinary skill that do not necessarily require explication in any reference or expert opinion." *Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1329 (Fed. Cir. 2009). True to this Court's instruction, the District Court reasoned that "both anticipation and obviousness depend on the factual inquiry of whether a prior art reference discloses every claim limitation," and considered the requirements of Sections 102 and 103 together, as applied to "claim 1, a representative independent claim," for both pieces of prior art, before ruling for ADASA on both issues. Appx6133-6138. The obviousness ruling rises or falls on its merits, and ADASA offers no merits defense—none.

As to anticipation, ADASA's brief confirms there was good grist for dispute. Testimony that ADASA itself elicited from Charles Williams, an expert ADASA retained and on whose opinions it relied, Appx246-259, explained how *RFID for Dummies*, despite not using the '967 Patent's term "Most Significant Bits," disclosed that limitation. Although ADASA faults Avery Dennison for not quoting Mr. Williams's "complete testimony" (Red Br. 36), we encourage this Court to read every line of his relevant testimony for itself. Appx5308-5313, Appx5486-5490.

Mr. Williams explained that, "Most significant bits is not specifically mentioned [in *RFID for Dummies*], but ***the first paragraph on page 240 exactly describes what we've just been talking about***." Appx5311 (emphasis added). He then elaborated on how page 240 of *RFID for Dummies* (Appx3878) disclosed the invention: "Well, it says here the serial number is effectively subdivided into a facility – facility number, line numbers, and sub -- sub serial numbers. So ***it's talking about partitioning the serial number bits*** into those distinct fields." Appx5312-5313 (emphasis added). And he agreed that, as taught by *RFID for Dummies*, "every serial number that came out of that facility would begin with the same facility number bits"; that "every number in that allocated block [would] begin with the same facility number"; and that "the serial number bits [would] uniquely correspond to that facility number." Appx5313.

Contrary to ADASA's premise (Red Br. 36), a jury could credit that and draw the natural inferences, whatever *else* Mr. Williams may have said. If anything, it is difficult to understand how anyone could reasonably interpret Mr. Williams's testimony as the court below did. ADASA makes much of Mr. Williams answering "No" when asked by ADASA's counsel "there's not a necessary conclusion from reading this that you would accomplish that by using most significant bits of the serial number?," and "It does not" when asked whether "in fact this doesn't mention anything about bits of a serial number at all, correct?" Appx5489. As obliging as

those answers to leading questions were, they did not, even by their literal terms, negate or disavow his preceding testimony. They certainly did not deny that *RFID for Dummies* would *naturally* be understood as teaching the same *substantive elements*, nor did they foreclose an *inference* that it anticipated Claim 1 or rendered it obvious.

Likewise, a jury should have assessed ADASA's argument that Kuhno's claimed system for "defin[ing] characteristics of the carton and pallet serial numbers," which "applies a unique number to each carton and each pallet," Appx3962, somehow "fails to disclose unique serial numbers at all." Red Br. 35. Here, too, the District Court erred by requiring identical *terminology* ("Most Significant Bits") in the Kuhno reference, *see* Appx6135-6136, without grappling with expert opinions and patent text reflecting how Kuhno disclosed the substantive equivalent.

Nor does ADASA rehabilitate the court's dismissal of Mr. Sweeney's opinions on both references, one of which he personally wrote, on the unexplained ground that they were "conclusory." Appx6136-6137. It is reversible error to disregard an expert who has "quoted the particular portions of the references that were relevant" and "for each claim limitation … connected it with disclosures in the prior art that he believed taught each particular limitation." *Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1220 (Fed. Cir. 2003). Mr. Sweeney did precisely what this Court has endorsed over the course of page after page of charts directly comparing the limitations in ADASA's claims to the disclosures in *RFID for*

*Dummies* and Kuhno. Appx3840-3847. Those charts addressed every limitation in Claim 1, including the requirement of using "Most Significant Bits" to concatenate the serial number, a concept that both references teach using distinct language, just as Mr. Williams testified. Appx5311.

Ultimately, ADASA lacks undisputed facts that justify preventing "the finder of fact" from deciding "[t]he question of what a reference teaches and whether it describes every element of a claim." *Med. Instrumentation*, 344 F.3d at 1221. Even if Claim 1 withstood review under Section 101, this case at best falls within the rule that "summary judgment is usually inappropriate" to decide material disputes over anticipation and obviousness. *Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.*, 635 F.3d 1373, 1384 (Fed. Cir. 2011); Blue Br. 38.

## III. ADASA FAILS TO REHABILITATE THE DISTRICT COURT'S FOUNDATIONAL ERRORS ON DAMAGES

### A. The Erroneous Instruction And Verdict Form Require Reversal Of The Damages Award

ADASA offers no colorable basis for affirming the District Court's incorrect requirement that the jury award a running royalty even though, as ADASA admits, "[l]ump sum licenses were in evidence." Red Br. 39. Hoping to elide the error, ADASA urges an abuse-of-discretion standard, but this Court "review[s] de novo the legal sufficiency of a jury instruction on an issue of patent law," including specifically

whether a patent damages instruction sufficiently reflects "the record created at trial." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1225, 1230 (Fed. Cir. 2014).

Moreover, ADASA mischaracterizes the error as merely "withhold[ing] any instruction as to the availability of lump sum damages." Red Br. 44. In actuality, the District Court *affirmatively misstated* the law and "effectively commandeered the jury by directing it to award damages in the form of a running royalty." Blue Br. 46. ADASA does not deny that the court's verdict form *required* the jury to award a running royalty:

II. DAMAGES

3. What amount has ADASA proven by a preponderance of the evidence that it is entitled to recover as a reasonable royalty compensation for Avery Dennison's infringement?

*Include Commissioning Authority tags in this calculation only if you answered YES to Questions 1 or 2.*

Running Royalty

| | | | | |
|---|---|---|---|---|
| 2,534,751,883 | x | $ $.0045 | = | $ 11,406,383.47 |
| [Total # of PCTag tags] | | [Royalty Amount per RFID tag] | | [Total reasonable royalty for RFID tags for the time period October 24, 2017 through March 31, 2021] |
| 3,385,665,173 | x | $ $.0045 | = | $ 15,235,493.28 |
| [Total # of Commissioning Authority tags] | | [Royalty Amount per RFID tag] | | [Total reasonable royalty for RFID tags for the time period October 24, 2017 through March 31, 2021] |

Appx11533. Even if Avery Dennison's "objections [had not been] adequately preserved," as the District Court "ma[d]e sure" they were, Appx15747, this instruction

reflected *plain* error: Licenses in the record, without more, suffice to support a jury's damages award in the same form as the admitted licenses. *See Atl. Thermoplastics Co. v. Faytex Corp.*, 5 F.3d 1477, 1482 (Fed. Cir. 1993). And even ADASA concedes that "[l]ump sum licenses were in evidence." Red Br. 39; *see* Appx15936-15959.

The District Court's erroneous legal premise warrants reversal under *any* standard of review. Despite quibbling over the precise characterization of two licenses (while conceding that the Goodyear license is clearly "a lump sum license," Red Br. 40-41), ADASA fails to identify any license that yielded anything other than a fixed (and modest) payment. Nor does ADASA dispute that any error was profoundly prejudicial. Blue Br. 49-50. There simply is no path to affirming an instruction and form that prohibited the jury from selecting a damages award that was, concededly, supported by record evidence combined with this Court's precedent.

ADASA nonetheless distinguishes between "[t]he presence of lump sum agreements in evidence" and "a lump sum damages theory," arguing that expert endorsement should be prerequisite to the latter. Red. Br. 41. But ADASA thereby denies the jury its say and contravenes precedent: "[S]ection 284 is clear that expert testimony is not necessary to the award of damages, but rather '*may* [be] receive[d] ... as an aid.'" *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1382 (Fed. Cir. 2003) (quoting 35 U.S.C. § 284). In a footnote (Red Br. 45 n.11), ADASA breezes past decisions affirming damages awards in forms that deviated from experts' testimony.

ADASA has no answer to juries' established right to depart from experts, in whole or in part, as they see fit. Indeed, "[a] party need not present expert testimony on damages or, as a corollary, on every aspect of damages, such as a single royalty rate." *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 985 (Fed. Cir. 2021).

It follows that ADASA's arguments about Mr. Yurkerwich's testimony (Red Br. 41-44) are a mere sideshow, as the licenses alone sufficed to require the requested instruction and form. Regardless, ADASA is wrong to describe Avery Dennison as "having repudiated use of in-evidence license agreements for any purpose" (Red Br. 42), based on Mr. Yurkerwich's testimony that he did not "think the Agron license provides a basis ***for a royalty rate***." Appx15654 (emphasis added). By critiquing ADASA's effort to enlist lump-sum licenses as basis for a running royalty, Mr. Yurkerwich was not urging the jury to disregard the licenses altogether. He specifically called the lump-sum Goodyear license "helpful in the sense that you might be able to infer a value associated with what Goodyear got and what they would be able to do with it." Appx15655. Nor was Avery Dennison "repudiat[ing]" the licenses, by any stretch, when it expressly embraced them as a basis for its requested instruction and form. Appx15716-15718, Appx15735-15747; Appx17898.

### B. The District Court Committed Reversible Error By Excluding Comparable Licenses

ADASA flails in trying to rationalize the wholesale exclusion of comparable licenses. While ADASA submits that "[t]his Court has deemed it appropriate to

exclude patent license agreements," Red Br. 52, none of the cited decisions excluded licenses. *Trell v. Marlee Electronics Corp.,* 912 F.2d 1443 (Fed. Cir. 1990) and *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009) instead found trial records insufficient to support the awards at issue. More to the point, *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960 (Fed. Cir. 2022), distinguished expert testimony on comparable licenses (which failed due to negotiation-history concerns absent here, *see id.* at 973-74) from the licenses themselves, which were admissible, *id.* at 972 n.5.

No precedent supports wholesale exclusion of comparable licenses, let alone doing so without explanation. *See* Appx7391 (ADASA moving to have Intermec and Round Rock licenses "excluded at trial"); Appx9476 (granting exclusion). Banishing these licenses from evidence contravened this Court's decisions and further trampled upon the jury's province. *See, e.g.*, *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1370-71 (Fed. Cir. 2017) (affirming admission of license that swept beyond asserted patents); *Snellman v. Ricoh Co.*, 862 F.2d 283, 289 (Fed. Cir. 1988) (reversing exclusion of license).

Although exclusion of the licenses justifies reversal, Avery Dennison's experts were also improperly excluded. Again, ADASA cites nothing from the District Court (Red Br. 48-53), but instead advances its own tendentious factual gloss that goes, at most, to weight. Quarrels over the degree of comparability for licenses that

concededly covered relevant RFID technology implicate fact disputes, not expert qualifications or methodology. *See, e.g.*, *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1326 (Fed. Cir. 2014) (reversing exclusion of expert where comparability was disputed).

Nor does ADASA fairly describe the issues surrounding comparability. ADASA does not dispute that the '967 Patent family cites a patent covered by the Intermec license as prior art, Appx6263, or that ADASA cited patents covered by the Round Rock license as material informing patentability, Appx6266. Although ADASA claims that there was no evidence that Avery Dennison required these licenses to sell the accused tags (Red Br. 48-50), that is false: Mr. Sweeney opined, without contradiction, that "Avery Dennison obtained through the Round Rock and Intermec licenses the right to sell the very transponders that ADASA accuses of infringement." Appx5766. And ADASA twists Mr. Sweeney's analysis of the "significant differences between the Intermec and Round Rock portfolios and ADASA's '967 patent" into a purported "admi[ssion] that the licenses are not comparable." Red Br. 51. He and Mr. Yurkerwich were simply doing what this Court requires: their accounts "permitted the jury to properly discount the [portfolio] license" and recognize the relative insignificance of ADASA's single abstract idea. *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1212 (Fed. Cir. 2010). By impugning them for acknowledging differences between licenses, ADASA is setting

up a Catch-22—because *not* accounting for those differences would have been *disqualifying*.

## IV. ADASA FAILS TO JUSTIFY THE DISTRICT COURT'S $20 MILLION DISCOVERY SANCTION

Finally, ADASA does not come close to justifying the sanction of more than $20 million for an unintentional, self-reported, self-remedied discovery failure. ADASA cites no precedent for anything approximating the format and magnitude of the Rule 37 sanction at issue, nor does ADASA explain why this should be the first case to endorse such drastic punishment.

To be clear, Avery Dennison does not deny the District Court's authority to impose *some* sanction. But a discovery sanction should be pegged to discovery. This sanction multiplied the jury's award, and it expressly depends on "the total number of tags included in the merits judgment," Appx3, such that it cannot possibly stand if the merits judgment falls. Only through word-play can ADASA suggest that the "merits judgment" is unaffected by "later events" like a reversal. Red Br. 62. And only with sleight of hand can ADASA suggest (Red Br. 61) that the ability still to award *some* sanction means that *this* sanction should stand even if its foundations crumble. *See, e.g.*, *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1292-93 (11th Cir. 2005) (Rule 37 "default sanction is, of course, mooted by our determination that the plaintiffs cannot establish liability"); *Bowers v. NCAA*, 475 F.3d 524, 537 (3d Cir.

2007) (reversing "aspects of the District Court's preclusion sanctions analysis [that] rest on the same erroneous assumption as its summary judgment analysis").

Even if the Court affirms in all other respects, the sanction remains infirm. ADASA accuses Avery Dennison of, *e.g.*, "suppressi[ng]" evidence, "knowing of 'red flags' about data incompleteness," and "misle[a]d[ing]" the jury, thereby "contaminating the royalty rate," Red Br. 6, 8, 10-11, 54, 56, but the District Court made no such findings and ADASA's citations do not support its account. To take one example, ADASA omits that the referenced "red flags" were described as such only as "viewed in retrospect." Appx14518. It remains undisputed that Avery Dennison self-disclosed its omission and stipulated to supplemental damages calculated by Ernst & Young at the company's expense. Appx14010-14011, Appx14190-14194, Appx14588. Although the Magistrate Judge faulted Avery Dennison for inadequate diligence, he simultaneously cast its counsel as irreproachable without identifying any evidence establishing a categorical difference in culpability. Appx14572-14574, Appx14576-14577.

Such gaps in explanation and analysis fail muster, especially considering the enormity of the sanction. By awarding damages for every one of the "infringing tags determined to exist," Appx14626, the court piled atop the parties' stipulated remedy and awarded ADASA the form of relief it sought from the jury. Appx15837-15838. It was thus dispositive "in practical terms," and necessitated consideration of "whether

the claimed noncompliance involved willfulness, fault, or bad faith" as well as "the availability of lesser sanctions." *R&R Sails, Inc. v. Ins. Co. of Penns.*, 673 F.3d 1240, 1247 (9th Cir. 2012).

The District Court did not and could not find the requisite culpability. ADASA notes that the District Court used the word "reckless" at hearing, but it also observed that applied "at worst." Appx14573. Even if that were a finding, the Ninth Circuit holds that "mere recklessness, without more," is *not* "tantamount to bad faith," and must "combine[] with an additional factor such as frivolousness, harassment, or an improper purpose," none of which is present, much less was found. *Fink v. Gomez*, 239 F.3d 989, 993-94 (9th Cir. 2001). The document discussed at the sanctions hearing was an email where an employee tasked with collecting accused schemas wrote "I only have access to SM. Here's the SM list." Appx14520. It was, to be sure, a serious oversight not to grasp the import of this exchange and not to report schemas from D2Comm, a separate database, but it could not warrant such extreme punishment.

Nor could the District Court ignore lesser alternatives. ADASA points to the District Court's recognition that "the default remedy of exclusion [was] unavailable," Appx14626, but ruling out one option "is an insufficient consideration of lesser sanctions," which must include "a reasonable explanation of possible and meaningful alternatives." *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 381 (9th Cir. 1988). The

District Court failed to explain why attorney's fees, which it awarded based in part on the discovery omission, were insufficient. Appx14582. Nor did the District Court begin to explain why it tied its sanction "to the number of infringing tags determined to exist," a figure that consists *mostly of properly-disclosed tags*, or why it selected a per-unit "sanction amount of $0.0025/tag," *more than half of what the jury awarded*. Appx14626-14627.

ADASA once again tries to find a preservation problem to shield error below, arguing that Avery Dennison failed "to make its own formal request" for lesser sanctions. Red Br. 60. But ADASA is doubly wrong. In fact, as soon as the District Court floated a sanction "which would effectively alter and increase the jury's award by increasing the royalty rate found by the jury," Avery Dennison noted that "ADASA at no time indicated in its briefing that it would be seeking" such a sanction, and suggested "a lesser sanction, such as compensating ADASA for any attorney's fees incurred as a result of recent disclosures." Appx14581-14582. It is incongruous for ADASA to fault Avery Dennison for lack of preservation considering that ADASA *never moved* for the sanction it obtained, *see* Appx13733-13736; Appx14082-14084, whereas Avery Dennison objected as soon as it surfaced, Appx14572-14574.

As to the law, Ninth Circuit precedent required the District Court to find more extreme culpability and unavailability of lesser sanctions before it could possibly issue this sanction. *Merchant v. Corizon Health, Inc.*, 993 F.3d 733 (9th Cir. 2021), on

which ADASA relies for the contrary proposition, addresses the motion requirements for avoiding *automatic* exclusion of unproduced evidence under Rule 37(c)(1), per the Rule's text. *Id.* at 742. Because this sanction was *not* automatic, the District Court was required to "first consider[] the impact of the sanction and the adequacy of less drastic sanctions," even absent any special request—which, again, Avery Dennison made. *United States for Use & Benefit of Wiltec Guam, Inc. v. Kahaluu Constr. Co.*, 857 F.2d 600, 604 (9th Cir. 1988) (reversing sanction based on failure to address alternatives without motion by sanctioned party). ADASA does not deny that lesser sanctions here were not only *available* but in fact *imposed* based on the same discovery lapse. Blue Br. 20, 22, 58-59.

At bottom, ADASA would defend the sanction as "mitigat[ing] contamination of the jury's <u>rate</u>." Red Br. 55. But that is telltale proof of an unconstitutional additur; the Seventh Amendment prohibits any such rationale.[5] Where "the jury award of damages is inadequate ... the only recourse is to grant a new trial." *DePinto v. Provident Sec. Life Ins. Co.*, 323 F.2d 826, 838 (9th Cir. 1963); *see also, e.g.*, *Yujin Robot Co. v. Synet Elecs., Inc.*, 744 F. App'x 338, 342 (9th Cir. 2018) ("The

[5] It rings false for ADASA to posit that the jury lowered the royalty rate "[a]s a result" of the missing schemas. Red Br. 6, 54, 55, 56, 58. The Court did not so find. The percentage of products accused played no part in Avery Dennison's closing argument. Appx15851-15865. And the verdict offers no such indication. Appx11532-11534.

appropriate remedy … would have been to order a new trial … not an additur."). Even where the jury makes an obvious mistake—which did not happen here—a court cannot substitute its view of what the jury *should* or *would* have awarded. *See Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, 490 F. Supp. 3d 593, 631-33 (E.D.N.Y. 2020).

If nothing else, the sanction award reflects an abuse of discretion. $20,032,889.80 vastly exceeds any reasonable remedy for this unintentional, self-reported discovery violation. Considering that a $500,000 sanction reasonably relates to the harm from a party "unilaterally ma[king] a conscious and willful decision to withhold" evidence until after trial, *SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1386 (Fed. Cir. 2013), a sanction of forty (40) times that amount cannot reasonably relate to the harm from an inadvertent oversight. And the absence of satisfying explanation below should leave a "definite and firm conviction that the district court committed a clear error of judgment." *Halaco*, 843 F.2d at 379.

## CONCLUSION

This Court should reverse the judgment for ADASA, vacate the sanctions, and remand with instructions.

DATED: March 25, 2022

By /s/ Derek L. Shaffer
Derek L. Shaffer
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, DC 20005
(202) 538-8000
derekshaffer@quinnemanuel.com

Joseph Milowic III
Owen Roberts
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010

Mark Tung
QUINN EMANUEL
URQUHART
& SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065

*Attorneys for Appellant*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2022-1092

**Short Case Caption:** ADASA Inc. v. Avery Dennison Corporation

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 6,989 words.

- [ ] the filing has been prepared using a monospaced typeface and includes ________ lines of text.

- [ ] the filing contains ________ pages / ________ words / ________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ________).

Date: 03/25/2022

Signature: /s/ Derek L. Shaffer

Name: Derek L. Shaffer

Save for Filing